IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NATHANIEL M. COSTLEY, SR. ET AL.

v.　　　　　　　　　　　　　　　　　Civil No. 13-cv-02488-ELH

BANK OF AMERICA, N.A. ET AL.

**MEMORANDUM OPINION**

Plaintiffs Nathaniel M. Costley, Sr. ("Mr. Costley")[1] and the Estate of Mary Jane Costley ("The Estate") instituted suit against defendants Bank of America, N.A., Individually and as Successor By Merger to BAC Home Loans Servicing, LP F/K/A Countrywide Home Loans Servicing, LP ("BANA"); Nationstar Mortgage, LLC ("Nationstar"); and Green Tree Servicing, LLC ("Green Tree"), predecessor to Dietech Financial, LLC ("Ditech"). *See* ECF 1.[2] The Second Amended Complaint is the operative pleading. ECF 79.[3] Plaintiffs seek damages based on claims of fraud, conversion, breach of contract, violation of the Truth In Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, and violation of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* Jurisdiction is founded on diversity of citizenship. ECF 79, ¶ 6.

---

[1] The Complaint does not contain a comma in the spelling of Mr. Costley's name. However, I shall use the spelling that appears elsewhere in the record.

[2] On October 19, 2017, this case was reassigned from Judge Motz to me. *See* Docket.

[3] Plaintiffs were self-represented when the suit was filed. However, Judge Motz appointed pro bono counsel for plaintiffs. *See* ECF 23. The Court expresses its sincere gratitude to pro bono counsel for his efforts.

BANA and Nationstar are the remaining defendants.[4] They have jointly moved for summary judgment (ECF 119), supported by a memorandum of law (ECF 119-1) (collectively, the "Motion") and numerous exhibits. Plaintiffs oppose the Motion (ECF 126) and have submitted exhibits. Defendants BANA and Nationstar have replied. ECF 128.

The parties have fully briefed the issues, and no oral argument is necessary. *See* Local Rules 105.6. For the reasons set forth below, I shall grant defendants' motion.

## I. BACKGROUND

Mr. Costley resides in Westminster, Maryland. ECF 119-18 at 8. He is the grandson of the late Mary Jane Costley ("Ms. Costley"). ECF 79, ¶ 9; ECF 119-1 at 1. Until Ms. Costley's death in 2009, she was the record owner of property located at 63 Charles Street in Westminster, Maryland (the "Property"). ECF 79, ¶ 22; ECF 119-1 at 3; ECF 119-1 at 5. Prior to her death, Ms. Costley entered into two loans with respect to this Property. These loans form the basis of the parties' dispute.

On September 29, 2006, Ms. Costley refinanced the existing mortgage on her property, taking out a loan (the "First Loan") from Ocwen Loan Servicing, LLC. ECF 79, ¶ 11; ECF 119-1 at 3. She executed a promissory note (ECF 119-2) and a deed of trust (ECF 119-3) in the amount of $88,935.00 in connection with the First Loan. Defendants were not involved in the origination of the First Loan. It was assigned to defendant BANA on December 30, 2011, (ECF 6-8), and was then assigned to Nationstar on January 4, 2013. ECF 6-11.

On September 21, 2007, Ms. Costley obtained a second mortgage on her property, taking out a loan (the "Second Loan") from Countrywide Bank, FSB, predecessor to BANA. ECF 79, ¶ 16; ECF 119-1 at 4. She executed a promissory note (ECF 119-6) and a deed of trust (ECF 119-

---

[4] Upon review of the docket, I note that in May 2017, Judge Motz granted the motion for summary judgment (ECF 118) filed by Ditech. *See* ECF 129 (Memorandum); ECF 130 (Order).

2

7) in the amount of $74,000.00 in connection with the Second Loan. BANA transferred the Second Loan to Ditech in March 2011. ECF 79, ¶ 36; ECF 119-1 at 5.

Ms. Costley became ill in August 2009, at which point she asked Mr. Costley to assist her with her finances. ECF 79, ¶ 18; ECF 119-1 at 5. Prior to that time, Mr. Costley had no knowledge of his grandmother's financial affairs, including the two loans. ECF 79, ¶ 19; ECF 119-1 at 5.

Ms. Costley died in December 2009. ECF 79, ¶ 22; ECF 119-1 at 5. At that point, BANA was servicing both loans. ECF 79, ¶ 21; ECF 119-1 at 5. Notably, Ms. Costley had not kept current with payments on the loans prior to her death. ECF 79, ¶¶ 20, 26; ECF 119-1 at 5. BANA informed Mr. Costley that the value of the Property was less than the amount owed on the two loans. ECF 79, ¶¶ 26, 28; ECF 119-1 at 6. Nevertheless, Mr. Costley voluntarily moved into the Property in February 2010 (ECF 79, ¶ 30; ECF 119-1 at 5), and The Estate deeded the Property to him on May 4, 2010. ECF 6-7.

In November 2009, shortly after Mr. Costley was made aware of his grandmother's financial situation and shortly before her death, Mr. Costley began an attempt to modify both loans. ECF 79, ¶ 21; ECF 119-1 at 6. This attempt continued in the months after the death of Ms. Costley. ECF 79, ¶ 25; ECF 119-1 at 6. Mr. Costley claims that at some point during those conversations BANA orally promised to modify or refinance the loans if he complied with certain conditions, and so he proceeded to comply with those conditions. ECF 79, ¶¶ 28-30; ECF 119-1 at 6. Mr. Costley's own affidavit (ECF 126-3) is the only evidence that such an oral agreement existed or that he complied with the terms of that agreement. *Id.* at 6.

In January 2011, Mr. Costley submitted a Home Affordable Modification Program ("HAMP") Loan Modification Agreement to BANA. ECF 119-16. BANA refused to sign the

agreement, however. ECF 47-7. Instead, it offered to allow Mr. Costley to personally assume the loans and then reapply for loan modifications himself after assuming personal liability. ECF 119-1 at 6; ECF 119-18 at 15, 18-19. Mr. Costley refused to assume the loans. *Id.*

Mr. Costley claims that, after BANA refused to sign the HAMP Loan Modification Agreement, he began to look more closely at the underlying loan documents. ECF 119-18 at 32-33. At that point, he says, he became suspicious about the legitimacy of the loans. *Id.* Specifically, he claims that he found an unsigned settlement sheet regarding the Second Loan, (ECF 119-18 at 14), realized that Ms. Costley was supposed to have received $30,744.82 pursuant to a Settlement Statement regarding the First Loan, (ECF 79, ¶¶ 67-68), and realized that Ms. Costley was supposed to have received $72,479.30 pursuant to a Settlement Statement regarding the Second Loan. ECF 79, ¶¶ 69-71. The record reflects that Ms. Costley made many payments on both loans (ECF 119-5; ECF 119-9), and includes the settlement statements for both loans. ECF 119-4; ECF 119-8. The only evidence in the record that Ms. Costley did not receive the payments she was supposed to have obtained pursuant to these settlement statements is Mr. Costley's own speculative assertions. ECF 119-18 at 22; ECF 126-3, ¶ 11.

In March 2011, after the Second Loan was transferred to Ditech, Mr. Costley claims that he began receiving daily harassing phone calls, telling him to pay the money owed on the two loans. ECF 126-4, ¶ 10. He claims that these calls continued until June 2013. ECF 126-4, ¶ 16.

On August 6, 2013, Mr. Costley was named the Personal Representative of Ms. Costley's Estate. ECF 126-4, ¶ 19. On August 26, 2013, faced with foreclosure and removal from the Property (ECF 119-1 at 7; ECF 126-4, ¶ 17), Mr. Costley filed the initial Complaint in this case, without counsel. ECF 1. After multiple amendments to the Complaint and discovery, the defendants filed motions for summary judgment. ECF 118; ECF 119. As noted, this court

entered summary judgment for Ditech on May 9, 2017. ECF 130. Defendants BANA and Nationstar's joint motion for summary judgment is pending.

## II. Standard Of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *see also Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017) ("A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law."). The non-moving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986).

The Supreme Court has clarified that not every factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts

showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied,* 514 U.S. 1042 (2004); *see also Celotex*, 477 U.S. at 322–24. In resolving a summary judgment motion, a court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. Ltd.*, 475 U.S. at 587; *accord Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The judge's "function" in reviewing a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir 2016). Thus, in considering a summary judgment motion, the court may not make credibility determinations. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007). Moreover, in the face of conflicting evidence, such as competing affidavits or deposition testimony, summary judgment ordinarily is not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002).

However, to defeat summary judgment, conflicting evidence must give rise to a *genuine* dispute of material fact. *Anderson*, 477 U.S. at 247–48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *see Sharif v. United Airlines, Inc.*, 841 F.3d 199, 204 (4th Cir. 2016). Conversely, summary judgment is appropriate if the evidence "is so one-sided

that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the [movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [movant]." *Id.*

### III. Discussion

**A.     Count 1 – Predatory Lending Under the Truth in Lending Act**

Count 1 is lodged only against BANA. ECF 79 at 9. Plaintiffs allege in Count I that BANA violated 15 U.S.C § 1639(h), a provision of TILA, when it extended loans to Ms. Costley that it knew, based upon her income, she would never be able to pay off. *Id.*, ¶¶ 57-63. Mr. Costley lacks standing to bring this TILA claim and The Estate is time barred from bringing it. Therefore, defendants are entitled to summary judgment with respect to Count I.

Mr. Costley has no standing to bring this TILA claim. Under 15 U.S.C. §1640(a), "any creditor who fails to comply with any requirement imposed under this part . . . with respect to any person is liable *to such person* . . . ." (emphasis added). Other district courts have correctly interpreted this provision to mean that "TILA confers a statutory 'right of action only on a borrower in a suit against a borrower's creditor.'" *Mortensen v. Home Loan Center, Inc.*, 2009 WL 113483, at *2 (D. Ariz. Jan. 16, 2009) (quoting *Talley v. Deutsche Bank Trust Co.*, 2008 WL 4606302, at *2 (D.N.J. Oct. 15, 2008)). It is undisputed that Mr. Costley was not the borrower in regard to either loan. ECF 119-2; ECF 119-6. Plaintiffs seemingly acknowledge this, as in their Opposition they have not argued that Mr. Costley has standing. Instead, they point out that The Estate has standing because Ms. Costley was the borrower. ECF 126-2 at 2.

Although plaintiffs are correct that The Estate has standing to bring the TILA claim, it is time barred from doing so. According to 15 U.S.C. § 1640(e), "any action to enforce a violation of section 1639 . . . of this title may be brought in any United States district court, or in any other

7

court of competent jurisdiction, before the end of the 3-year period beginning on the date of the occurrence of the violation." The loans in question originated on September 29, 2006 and September 21, 2007. ECF 119-2; ECF 119-6. Therefore, the three-year statute of limitations expired in 2010, at the latest, well before The Estate filed this lawsuit in August 2013.

Because Mr. Costley lacks standing to bring this TILA claim and because The Estate is time barred from bringing it, I shall grant summary judgment to BANA with respect to Count I.

**B.** **Count II - Fraud**

Count II is lodged only against BANA. ECF 79 at 9. Plaintiffs allege in Count II that BANA made false representations to Ms. Costley, including representations that she would receive disbursements of funds pursuant to the settlements of both loans and a representation that she qualified for the Second Loan when she in fact did not. ECF 79, ¶¶ 64-77. Plaintiffs are time barred from bringing this claim.

In Maryland, a three-year statute of limitations generally applies to civil claims. *See* Md. Code, § 5-101 of the Courts and Judicial Proceedings Article ("C.J."). The alleged misrepresentations occurred in 2006 and 2007 (ECF 79, ¶¶ 62-63), but plaintiffs did not file their initial complaint until August 2013. ECF 1.

Plaintiffs argue that their claim is not time-barred because the three-year statute of limitations did not begin to run until February 2012, when Mr. Costley uncovered an unsigned Settlement Statement regarding the Second Loan, at which point plaintiffs were for the first time on notice that they had been defrauded. ECF 126-2 at 4. Even if Mr. Costley uncovered such a statement on that day, this argument fails. Indeed, Ms. Costley was on inquiry notice—if not express notice—of any fraud when representations allegedly made to her were not met.

8

The discovery doctrine, from which plaintiffs seek cover, is long established in Maryland. It provides:

> Before an action can accrue . . . a plaintiff must have notice of the nature and cause of his or her injury. There are two types of notice: actual and constructive. Actual notice is either express or implied . . . Implied notice, also known as inquiry notice, is notice implied from knowledge of the circumstances which ought to have put a person of ordinary prudence on inquiry (thus, charging the individual) with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued.

*Windesheim v. Larocca*, 443 Md. 312, 327, 116 A.3d 954, 962 (2015) (internal citations and quotations omitted). *See also*, *e.g.*, *Frederick Road Ltd. P'ship v. Brown & Sturm*, 360 Md. 76, 95-96, 756 A.2d 963, 973 (2000); *Poffenberger v. Risser*, 290 Md. 631, 636, 431 A.2d 677, 680 (1981).

If Ms. Costley relied on representations made in 2006 and 2007 that she was to receive disbursements of funds, a person of ordinary prudence in her position would have investigated whether she had received those funds in one form or another. Therefore, she was on inquiry notice of any failure to comply with those representations from the moment such failure occurred. Moreover, Pamela Allen, the Administrator of The Estate, had a duty to account for the assets in The Estate upon Ms. Costley's death. *See* Md. Code, Estates & Trust Article, §§ 7-201 *et seq*. Therefore, plaintiffs were on notice of any fraud regarding the origination of the loans well before August 2010. Accordingly, the three-year statute of limitations ran well before plaintiffs filed this lawsuit in August 2013. Because this claim is time barred, BANA is entitled to summary judgment with respect to Count II.

**C.    Count III – Fraud**

Count III is lodged only against BANA. ECF 79 at 11. Plaintiffs allege in Count III that BANA made false representations to Mr. Costley between November 2009 and January 2010

9

when it suggested to him that if he engaged in certain conduct it would modify or refinance the loans. ECF 79, ¶¶ 78-86. Mr. Costley has standing to bring this claim and this claim is not time barred. However, plaintiffs abandoned this clam by failing to address defendants' arguments for summary judgment in their Opposition. *See Williams v. Silver Spring Volunteer Fire Dep't.*, 86 F. Supp. 3d 389, 419 (D. Md. 2015); *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010); *Mentch v. Eastern Sav. Bank, FSB*, 949 F. Supp. 1236, 1247 (D. Md. 1997).

Specifically, plaintiffs fail to counter defendants' argument that "the undisputed facts demonstrate that BANA made no false representations to Mr. Costley," and that "the undisputed evidence shows only that Mr. Costley attempted to gain a loan modification and that his request was denied." ECF 119-1 at 27. Beyond Mr. Costley's bald assertion, there is no evidence of a promise by BANA, and no legal basis to conclude that the alleged promise is legally enforceable.[5]

In any event, in *In re Lisier*, PM-10-693, 2010 WL 4941475 (Bankr. D. Md. Nov. 24, 2010), the court pointed to "the legion of other courts that have found no private right of action under HAMP." *Id.* at *2.

I shall grant summary judgment to BANA with respect to Count III.

**D.    Count IV – Civil Theft/Conversion**

Count IV is lodged only against BANA. ECF 79 at 12. Plaintiffs allege in Count IV that BANA committed civil theft or conversion of Ms. Costley's funds by failing either to (1) distribute directly to her the sum of $30,774.82 that she was allegedly owed in connection with

---

[5] Contrary to BANA's assertions (ECF 119-1 at 16-17), the claim is not time barred. BANA points out that the claim arose no later than February 2011. *Id.* at 17. Given that suit was filed in Augsut 2013, BANA's limitations argument lacks merit.

10

the First Loan or (2) apply that amount to the Second Loan to reduce the balance of the First Loan. ECF 79, ¶¶ 87-92. Defendants are entitled to summary judgment with respect to Count IV for precisely the same reason they are entitled to summary judgment with respect to Count II: their claim is time barred.

As noted, under C.J. § 5-101 there is a three-year statute of limitations for civil claims in Maryland, including conversion. *See Advance Dental Care, Inc. v. Suntrust Bank*, 906 F. Supp. 2d 442 (D. Md. 2012). Although Ms. Costley was on inquiry notice of any conversion of funds from the time it allegedly occurred in 2007, plaintiffs did not file the initial Complaint until August 2013. ECF 1.

Plaintiffs argue that Ms. Costley was not on notice of the conversion when it occurred because she was unsure whether the proceeds from the Second Loan were to be applied to pay down or pay off the First Loan. ECF 126-2 at 4. As the signatory to these loans, Ms. Costley had every opportunity to inquire further in order to resolve any confusion about what form her payment was going to take. Moreover, the Administrator of The Estate had a duty to account for the assets in The Estate upon Ms. Costley's death. For these reasons, plaintiffs were on notice of any civil theft or conversion of funds owed to Ms. Costley well before August 2010. Therefore, the three-year statute of limitations expired before plaintiffs filed this lawsuit in August 2013.

I shall grant summary judgment to BANA with respect to Count IV.

**E.    Count V – Violation of the Fair Debt Collection Practices Act**

Count V is lodged against all defendants. ECF 79 at 13. Plaintiffs allege in Count V that defendants violated the FDCPA when Mr. Costley began receiving harassing telephone calls, multiple times a day, beginning in March 2011 and continuing through June 2013, pressuring him to pay off both loans. ECF 79, ¶¶ 93-96.

11

The claim is time-barred. Under the Fair Debt Collection Practices Act a one-year limitations period applies for commencing a claim. *See* 15 U.S.C. § 1692k(d). "The limitations period for FDPCA claims commences from the date of the first violation, and subsequent violations of the same type do not restart the limitations period." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 316 (D. Md. 2014). *See also McGhee v. JP Morgan Chase Bank, N.A.,* No. DKC-12-3072, 2013 WL 4495797, at *7 n. 10 (D. Md. Aug. 20, 2013); *Alston v. Cavalry Portfolio Servs., LLC,* No. AW-12-3589, 2013 WL 665036, at *3 (D. Md. Feb. 22, 2013); *Fontell v. Hassett*, 870 F. Supp. 2d 394, 404 (D. Md. 2012); *Martin v. Sessoms & Rogers, P.A.,* No. 5:09-CV-480-D, 2010 WL 3200015, at *3-4 (E.D.N.C. Aug. 12, 2010).

Plaintiffs allege that the harassing telephone calls began "in March 2011" (ECF 79, ¶ 94), which means the one-year statute of limitations ran before plaintiffs filed this lawsuit in August 2013. Accordingly, I shall grant defendants summary judgment to defendants with respect to Count V.

### F.    Count VI – Breach of Contract

Count VI is directed to BANA and Nationstar. ECF 79 at 14. Plaintiffs allege in Count VI that BANA and Nationstar breached an oral contract with Mr. Costley when they failed to modify or refinance loans after promising to do so if Mr. Costley engaged in certain conduct. ECF 79, ¶¶ 97-115. Defendants are entitled to summary judgment with respect to this claim because plaintiffs have created no dispute as to the existence of a contract.

The three elements required to prove the existence of a contract under Maryland law are "mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration." *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 778 (4th Cir. 2013). *See also CTI/DC, Inc. v. Selective Ins. Co. of Am.*, 392 F.3d 114, 123 (4th Cir. 2004). Putting to one side

issues regarding mutual assent and consideration, it is clear that plaintiffs have not created a genuine dispute as to whether defendants and Mr. Costley entered into "an agreement definite in its terms."

When asked at his deposition to identify the terms of the contract, Mr. Costley acknowledged that he was never provided any terms in writing and claimed that he was told over the phone that defendants would "work it out." ECF 119-18 at 20-21. Defendants may have made oral representations to Mr. Costley suggesting a course of conduct he should pursue if he wished to improve his chances of one day obtaining modification of the loans. However, the record makes clear that there was no agreement between the parties sufficiently "definite in its terms" to be considered a contract.

Because plaintiffs have not offered evidence that there was, in fact, a contract, their claim for breach of contract necessarily fails. Accordingly, I shall grant summary judgment to defendants with respect to Count VI.

### IV. Conclusion

For the foregoing reasons, I shall grant defendants' motion for summary judgment. An Order follows.

November 20, 2017  /s/
Date  Ellen L. Hollander
  United States District Judge

13