# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

NATHANIEL M. COSTLEY, SR., *et al.*,  )
                                                                   )

     Plaintiffs,                        )
                                                       )

v.                                               )     **Case No: 13-CV-02488-ELH**
                                                       )

COUNTRYWIDE HOME LOANS, *et al.*,    )
                                                       )

     Defendants.                     )

## <u>PLAINTIFFS' VERIFIED MOTION TO ALTER OR AMEND JUDGMENT GRANTING DEFENDANTS', BANK OF AMERICA, N.A. AND NATIONSTAR MORTGAGE, LLC'S MOTION FOR SUMMARY JUDGMENT ON COUNTS I, II, III, IV, V, AND VI AND REQUEST FOR HEARING</u>

Plaintiffs, Nathaniel M. Costley, Sr. and The Estate of Mary Jane Costley ("Plaintiffs"),

acting *pro se*,[1] and pursuant to Fed. Rule Civ. P. 59(e)(3), submits this Motion to Alter or Amend

Judgment Granting Defendants' Bank of America, N.A., Individually and as Successor By Merger

to BAC Home Loans Servicing, LP F/K/A Countrywide Home Loans Servicing, LP ("BANA")

and Nationstar Mortgage, LLC ("Nationstar"), Motion for Summary Judgment on Counts I, II, III,

IV, and VI of the Second Amended Complaint. For the reasons stated below, Plaintiffs request that

this Court alter or amend its November 20, 2017, Memorandum Opinion and accompanying Order,

and vacate and deny the summary judgment granted as to Counts I, II, III, IV, V, and VI.

---

[1] Plaintiffs have been represented by Court-appointed pro bono counsel, Robert C. Park, Esq, up
until the time this case was closed. Mr. Park has informed me that he is no longer representing
me, however, Mr. Park has provided me with assistance in the drafting of this Motion and I am
proceeding pro se again.

**L&B 6695237v1/09999.0369

## I.     PRELIMINARY STATEMENT

Plaintiffs respectfully request that this Court grant their Motion to Alter or Amend and vacate and deny the summary judgment granted as to Counts I, II, III, IV, V and VI. There are genuine disputes of material facts with regard to the claims contained in those Counts, and Plaintiffs have set forth valid and verified claims of fraud, civil theft/conversion and breach of contract. Accordingly, Plaintiffs request that the summary judgment be vacated and denied with regard to Counts I, II, III, IV, V, and VI and a date for trial be set on the merits of these Counts, and for such other and further relief that is proper and just.

## II.     DISCUSSION

### A.   COUNT I – PREDATORY LENDING UNDER the TRUTH IN LENDING ACT

The Court determined that the Claims in Count I Mr. Costley was not the borrower on the loan and that Mary Jane Costley (Ms. Costley) did not bring suit within the three years required by law and thus is barred from filing suite because of the statue of limitations. The Plaintiff's respectfully disagree and ask this Court to reconsider and reverse its decisions for the arguments incorporated in Counts I, II, III, IV, V, and VI as well as the following:

Defendant's BANA, Nationstar and Green Tree own Ditech each tried to get Mr. Costley to assume the loans after BANA failed to uphold it's end of the Contract which was to refinance the loan after Mr. Costley completed his part of the Contractual Agreement which he incorporates from Count VI Breach of Contract. Moreover, Plaintiff had interest in the home and the home was transferred into Mr. Costley's name after being advised that the home was not owner occupied and needed to be in Mr. Costley's name in order to complete the loan modification. This was another false and misleading act by Defendant who tried to pass two bad loans unto Mr. Costley and cost

2

him and his family over $75,000.00 and years of depression and hardships as a result of them breaching the contract.

Ms. Costley was not in her right state of mind to understand the term and condition of the loans as she was suffering from lung cancer and heavily medicated most of the time. Moreover, due in part to her level of education and the complexity of the loan document she would not have been able to nor could she even begin to bring action against these defendants who have duped, manipulated, lied, and twisted her Grandson, Mr. Costley's words in spite of him having two degrees and some knowledge of the law. Therefore, this is a case of Equitable Estoppel and Plaintiff also wish to incorporate and rely upon arguments from Count V and VI in this motion and wishes to preserve the right to add additional arguments during trail and on Appeal if this Court does not hear them.

**COUNT II – FRAUD**

The Court determined that the claims in Count II alleging fraudulent misrepresentations to the Plaintiff, Ms. Costley regarding the second loan against Defendant, BANA, were barred by Maryland's three-year general statute of limitations applicable to civil claims. *Memorandum Opinion, pp.8-9.* The Court concluded that Ms. Costley was on "inquiry notice" of the alleged fraud when she did not receive the disbursement of funds that she was entitled to receive in 2006 and 2007, and was told that she qualified for the second loan when she did not. The Court concluded since the Plaintiffs did not file their initial Complaint until August 2013, and since the three-year statute of limitations ran in 2010, that these claims were time-barred.

Summary judgment should not have been granted as to Count II since there are genuine disputes of material facts as to when these fraud claims were discovered. As to Ms. Costley, her

3

ability to be on even "inquiry notice" was impacted by the fact that she was suffering and eventually died from Stage IV cancer and was heavily medicated for many months that affected her judgment. Ms. Costley had only a below average grade level education from a segregated school in the 1900's, and the documentation that she was presented for the second loan was confusing, at best, as to the "refinancing" of the first loan that was supposed to occur. As stated in the Plaintiff's Support of the Opposition to Defendant Ditech's Motion for Summary Judgment, Doc. 124-3 (incorporated by reference in my Affidavit in Opposition to Defendants Bank of America and Nationstar's Motion for Summary Judgment, Doc. 125-3), Exhibit C to that Affidavit states that the second loan was to be a "DEBT CONSOLIDATION," as does the Settlement". Statement for the second loan attached as Exhibit D to my Affidavit. Further, the letters Ms. Costley received were to "refinance" the first loan and accomplish a "debt consolidation" through the second loan (Exhibit E to my Affidavit) and contradict evidence that Ms. Costley was to receive cash from the second loan. In fact, Exhibit F to my Affidavit ("Closing Instructions" for the Second Loan) provides that cash proceeds were not to be given to the Borrower "unless approved by Lender." Moreover, neither Ms. Costley, Mr. Costley, Pamela Allern (Mrs. Allen), Administrator of the Estate, nor any other person of ordinary prudence would have been on notice of the fraud since the box stating, "I am refinancing my existing loan (s) to receive cash-out from the new loan...." was NOT CHECKED by Ms. Costley. However, Ms. Costley allegedly checked one and only one box on the document titled "Statement of Borrower's Benefits", allegedly signed by Ms. Costley where which states; "I am refinancing my existing loans because I am consolidating other loans and debts I have into a single new loan" While the documents as dated September 29, 2006 they were not discovered by Plaintiff until 2016 when they were produced by defendants

4

during discovery and later given to Plaintiff by Mr. Parks, Pro Bono Attorney in 2016, attached hereto and incorporated herein as **Exhibit 1.**

All of the above shows that there is a genuine dispute of the material facts as to whether Ms. Costley was on inquiry notice of the fraud. As this Court stated in its Memorandum Opinion, the judge's "function" in reviewing a Motion for Summary Judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue." *Id.*, page 6. The Court also noted that in resolving a Summary Judgment Motion, it must "view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the non-moving party." *Id.*

The facts of Ms. Costley's health, age, education level, and the confusing and conflicting statements in Defendant's own documents, should leave this Court to infer that there is and are genuine disputes of material fact as to whether Ms. Costley (the Estate) was defrauded by the Defendants and as to whether it can be concluded that Ms. Costley (the Estate) was on inquiry notice of the fraud.

As to whether Mrs. Allen, should have been on inquiry notice of these claims, too, after Ms. Costley died, the "duty to account for the assets of the Estate" cited by the Court from the Maryland Estates and Trusts Article, simply required Mrs. Allen to determine that Ms. Costley owned a house which had two Deed of Trust loans on it at the time she died. There would be no reason for Mrs. Allen to discover a fraud or to be on notice of a fraud related to those two loans since Defendant never filed a claim in the probate which would require investigation. MD Rules, Rule 13-401 Proof of Claim states: (a) Filing. Any person who wishes to make a claim against the estate of a debtor shall file a verified proof of claim with the clerk. The proof of claim shall be filled within 120 days after the date the Notice to Creditors is issued by the clerk.

5

Further, in performing the duty to "account," Mrs. Allen had no reason to investigate further since an Administrator does not have to be concerned with mortgages and deeds of trust that are recorded security interests against assets of the Estate. *See* MD. CODE ANN., EST. & TRUSTS, §8-103(d). Mrs. Allan had no reason to believe the house had any value or that her Mother, Ms. Costley, was due over $104, 000.00 from the two loans on the property or she would not have signed her interest over to her nephew, Mr. Costley. Affidavit of Mrs. Allen attached hereto and incorporated herein as **Exhibit 2.**

Moreover, this is a case of Equitable Estoppel and Plaintiff also wish to incorporate and rely upon arguments from Count V and VI in this motion and wishes to preserve the right to add additional arguments during trail and on Appeal if this Court does not hear them.

## B.     COUNT III – FRAUD

The Court found that the claim of fraud in Count III of the Complaint against BANA was abandoned by the Plaintiff, failed to address BANA's arguments for summary judgment in his opposition. The Court held that "[b]eyond Mr. Costley's bald assertion, there is no evidence of a promise by BANA, and no legal basis to conclude that the alleged promise is legally enforceable." *Memorandum Opinion, p. 10.* Summary judgment should not have been granted with regard to Count III because these claims were not abandoned by the Plaintiff. Further, there is evidence of a promise by BANA, and thus a legal basis to conclude that the promise is enforceable.

In my Memorandum of Points and Authorities in Support of Response in Opposition to the Motion for Summary Judgment filed by Defendants, BANA and Nationstar Mortgage, LLC ("Opposition"), the Plaintiff assert various arguments in opposition to BANA's Motion for Summary Judgment. Specifically, the Plaintiff state in my Opposition that

6

> [a] plain reading of the allegations in those Counts [Counts III and VI] shows that the claims are for fraudulent representations that were made that induced Mr. Costley, for himself and on behalf of the Estate, to take certain actions and incur certain expenses on the false promise that Defendants would then work with Plaintiffs on a modification or refinancing of those loans. These allegations are based upon common law fraud and breach of contract that arose *before* the HAMP loan modification applications were made by the Plaintiffs. These claims do not arise out of the failure to approve the HAMP modifications but, instead, arise out of the fraudulent conduct and breach of agreements that occurred prior to that time.

Opposition, Doc. 126-2, p. 2.

Moreover, the Plaintiff make additional arguments that "Defendants owed a duty to Plaintiffs to act in good faith and fair dealing in the matter of working with Plaintiffs to gain a loan modification or refinancing, which they failed to do. Defendants are incorrect in taking the position that Plaintiffs have no legal claim for Defendants' breach of that duty." *Id.* at p. 7.

Finally, the Plaintiff contended in my Opposition that

> . . . there is sufficient evidence to establish a genuine dispute of material fact as to whether an oral contract was created between Defendants and Plaintiffs based upon Mr. Costley's Affidavit (¶14) and the part performance described, as well as the part performance of the Defendants shown by Exhibit C to his Affidavit relating to an agreed "Repayment Plan." There was mutual assent here due to the Defendants' acceptance of the part performance of Mr. Costley and their receipt of the benefit from that performance in the form of improvements to the house, adding value to the Bank's collateral, and in the form of the cash payments Mr. Costley made on the Loans to Defendants. Once those steps were taken by Mr. Costley, the reciprocal duty and obligation were created in the Defendants, which they breached and failed to perform.

*Id.* at p. 9.

As is set forth above, the Plaintiff did not abandon his claims of fraud against BANA and Summary Judgment should not have been granted.

Similarly, the Plaintiff alleged more than "bald assertions" that BANA made false representations regarding a loan modification for the property. In the Plaintiff Affidavit in support of his opposition to BANA's Motion to Dismiss (Doc. 27-1), the Plaintiff verifies that:

7

8.      After Mrs. Costley's death, between December 2009 and January 2010, Mr. Costley spoke with BANA several times about moving back into the home and assuming the loan. At that time, BANA explained to him that the loan was not current and the Property was not worth the value of the loan. BANA indicated that in order to obtain a refinance, he would need to (1) transfer the deed to his name; (2) bring the taxes current; (3) obtain homeowners insurance; (4) move into the Property; (5) bring the Loans current; and (6) remodel the Property to increase its value. As a result of this agreement with BANA, Mr. Costley set up a payment plan to bring the loan current, and obtained authorization from the family to transfer the Deed to his name.

9.      In February, 2011, most of the renovations of the Property were complete, Mr. Costley had paid the outstanding taxes due, and had brought both loans current. At that time, he reached out to BANA to request a loan modification. BANA denied his request, stating that since the home was not owner occupied, he could not obtain a loan modification. To meet this requirement, he moved out of the home that he was living in with his family at the time, and we moved to the Property.

10.     Despite several attempts on my part, BANA would no longer accept any mortgage payments.

Affidavit, Doc. 27-1, p. 2.

Importantly, BANA has never denied or disputed that Mr. Costley performed all of these steps. In addition, BANA never alerted or advised him that he did not need to perform these steps, and that in fact, the Estate could have requested a loan modification. *See* MD. CODE ANN., EST. & TRUSTS, §7-401. Instead, BANA advised him that "[y]ou are not eligible for a Home Affordable Modification because you do not live in the property as your primary residence." Affidavit, Doc. 27-1, p. 992. *see also* Correspondence from BAC Home Loans Servicing, LP, dated March 01, 2011, attached hereto and incorporated herein as **Exhibit 3**. This letter was sent, even though at that time, Mr. Costley was already living in the property, as a result of BANA advising me to do so.

8

Based upon these allegations and assertions, it is clear that he did not abandon his claims

of fraud in Count III of the Complaint, and Mr. Costley set forth more than bald assertions as to

BANA's false representations to me that it would modify the loans.

Moreover, this is a case of Equitable Estoppel and Plaintiff also wish to incorporate and

rely upon arguments from Count V and VI in this motion and wishes to preserve the right to add

additional arguments during trail and on Appeal if this Court does not hear them.

## C.    COUNT IV – CIVIL THEFT/CONVERSION

In its Memorandum Opinion, this Court granted Summary Judgment to Defendant, BANA,

on Count IV related to the Plaintiffs' claims that this Defendant committed civil theft or conversion

by failing to either distribute to Ms. Costley cash from the first and second loan, or using the

amount of the second loan to reduce the balance of the first loan. This Court determined that, for

the same reasons that Summary Judgment was granted as to Count II, that these claims were time-

barred.

For the same reasons argued above as to why the Summary Judgment as to Count II should

be vacated, there are genuine disputes of material fact surrounding Count IV that, likewise, require

Summary Judgment to be vacated and the matter to be set for trial on the merits.  Plaintiffs

incorporate their arguments as to Count II above in this section of the Motion dealing with Count

IV.

In addition, Mr. Costley should be permitted to explain further why discovery or inquiry

notice were not applicable under the facts of this case to bar these claims of the Plaintiffs, and why

he did not have reason to suspect any potential claims until he discovered the unsigned Settlement

Statement in February 2012, indicating net cash proceeds should have been distributed to Ms.

Costley.  That is when he was on notice of any potential claims, and he promptly undertook and

9

conducted a timely investigation leading to the filing of the Plaintiffs' initial Complaint in August 2013.

Pursuant to my Affidavit, Doc. 124-3 and 125-3 (Paragraphs 18-20) previously filed in Opposition to the Defendant's Motion for Summary Judgment, there are genuine disputes of material fact as to whether and which documents presented by the Defendant were actually signed by Ms. Costley. As Mr. Costley stated, he, as well as other family members, were close enough to Ms. Costley to know her signature and to have been aware if she had received the disbursements of funds as claimed by the Defendant. At the time of her death, there was not even enough money in Ms. Costley's Estate to pay for her burial. The burial expenses had to be handled through a credit arrangement with the funeral home, attached hereto and incorporated herein as **Exhibit 4.** There were no assets in the Estate that would have justified the type of investigation that he later did to determine whether and what claims might have existed from these loans, attached hereto and incorporated herein as **Exhibit 5.**

### D.    COUNT V – VIOLATION OF THE FAIR DEBT COLLECTION PRACTICE ACT.

A statue of limitation is a privilege that is granted to a defendant. If the defendant fails to properly raise the defense it is waived. Moreover, if the Court looks closely at the record this is a case involving Equitable Estoppel and each of the defendants are prohibited from using the time barred statue of limitation as a defense. Hollins v. Yellow Freight Sys., Inc., 590 F. Supp. 1023, 1028 (N.D. Ill. 1984) ("Equitable estoppel will only be invoked, however, where a defendant made statements during the course of settlement negotiations which were calculated to lull the plaintiff into inaction and to induce a reasonable belief that the claim would be settled without suit."). Plaintiff incorporates the arguments in Count VI – Breach of Contract and perseveres the right to

10

add additional arguments at a hearing and on Appeal if this Court does not hear arguments on this claim and other prior to an Appeal.

### E.     Count VI - BREACH OF CONTRACT

This Court, in its Memorandum Opinion, granted Summary Judgment to BANA and Nationstar with regard to my claims of Breach of Contract under Count VI of the Complaint. This Court held that Plaintiffs have created no dispute as to the existence of a contract and that there was no agreement between the parties sufficiently "definite in its terms" to be considered a contract.

For the same reasons argued above as to why the Summary Judgment as to Count III should be vacated, there are genuine disputes of material fact surrounding Count VI that require Summary Judgment to be vacated. Plaintiffs incorporate their arguments as to Count III above in this section of the Motion dealing with Count VI. There are genuine disputes of material fact as to whether there was a contract between the parties. Specifically, there are genuine disputes of fact as to whether an oral agreement was created between the parties.

As was set forth above, and based upon Mr. Costley various Affidavits, the **offer** by Defendants was that BANA would enter into a loan modification and refinance the loans if he (1) transferred the deed to my name; (2) brought the taxes current; (3) obtained homeowners insurance; (4) moved into the property; (5) brought the loans current; (6) and remodeled the property. He **accepted** this offer by complying with these requirements and performing the prerequisites to obtaining a loan modification. There is simply no other explanation as to why Mr. Costley performed all of these requirements and Defendants have provided no explanation as to why he would have "voluntarily" done these things if not to refinance the loans on the property. This offer by BANA was further evidenced pursuant to the agreed upon "Repayment Plan."

11

Affidavit, Doc. 124-3 and 125-3, *see also* Correspondence from Bank of America Home Loans, dated January 10, 2010, attached hereto and incorporated herein as **Exhibit 6**.

As to the terms of the contract, the parties did not need to agree on any specific terms because the specific terms of the modification are set forth by a formula under the HAMP program. There were no terms to negotiate, as the amount of and timing of payments would be laid out pursuant to the calculations generated by HAMP.

Based upon the above, there are clearly genuine disputes of material fact as to whether there was a contract between the parties and a breach thereof by the Defendants.

## III.    CONCLUSION

For the foregoing reasons, and the existence of genuine disputes of material fact, summary judgment should be vacated and denied with regard to Counts I, II, III, IV, V, and VI, and a date for trial should be set on the merits on these Counts. Plaintiffs reserve all other arguments for purposes of the filing of any appeals and to add additional arguments if this Court denies plaintiff motion without a hearing.

12

## VERIFICATION

I DO SOLEMNLY AFFIRM under the penalties of perjury that the facts stated in the foregoing Motion are true and correct and based upon my personal knowledge.

Nathaniel M. Costley, Sr.

## REQUEST FOR HEARING

Plaintiffs request an oral hearing regarding the foregoing Motion.

Nathanial M. Costley, Sr.

13

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this  18th  day of December 2017, I caused a true and correct copy of the foregoing Plaintiffs' Motion to Alter or Amend Judgment Granting Defendants, Bank of America, N.A. and Nationstar Mortgage, LLC's Motion for Summary Judgment on Counts I, II, III, IV, V, and IV, Request for Hearing and proposed Order was mailed by first class mail, postage prepaid to:

Craig Robert Houghton, Esquire
McGuireWoods
1345 Avenue of the Americas
7th Floor
New York, NY, 10105-0106
404 443-5612

Emily Michele Patterson, Esquire
McGuireWoods
500 East Pratt Street
Suite 1000
Baltimore, Maryland 21202-3109
410 659-4400

Mark E. Shaffer, Esquire
McGuireWoods
1750 Tysons Boulevard
Suite 1800
Tysons, Virginia 22102-4215
703 712-5438

Andrew Williamson
Blank Rome LLP
1825
Eye St. NW
Washington, DC 20006
202 420-2252

Nathaniel M. Costley, Sr.

14

**L&B 6695237v1/09999.0369